```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA

LARRY CLELAND,               )
                             )
          Plaintiff,         )
                             )
v.                           )    Case No. CIV-13-005-JHP-KEW
                             )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social       )
Security Administration,     )
                             )
          Defendant.         )
```

## REPORT AND RECOMMENDATION

Plaintiff Larry Cleland (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on November 6, 1971 and was 40 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has previously worked as a machinist and fork lift driver. Claimant alleges an inability to work beginning June 1, 2008 due to limitations resulting from back problems and high blood pressure.

**Procedural History**

On June 30, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 7, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Trace Baldwin in McAlester, Oklahoma. By decision dated January 3, 2012, the ALJ denied Claimant's request for benefits. The Appeals Council denied review of the ALJ's decision on November 26, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper and unsupported RFC; (2) engaging in an improper

credibility analysis; and (3) failing to further develop the record.

## RFC Evaluation

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar degenerative changes, dysthymic disorder, generalized anxiety disorder, and borderline intellectual functioning. (Tr. 13). He also found Claimant retained the RFC to perform less than a full range of light work, concluding he can lift/carry 20 pounds occasionally and 10 pounds frequently, he can stand/walk for about 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday. The ALJ also determined Claimant had the unlimited ability to push/pull, including the operation of hand/foot controls. He had no postural, manipulative, visual, communicative, or environmental limitations. Claimant could understand, remember, and carry out simple instructions and tasks, make routine adjustments to the work setting, and get along with co-workers and supervisors and the general public on a superficial work basis. (Tr. 16). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of bakery worker, housekeeper, and bench assembler, all of which the ALJ determined exist in substantial numbers in the state and national economies. (Tr. 23).

Claimant contends that the ALJ erred in arriving at his RFC determination. Claimant first addresses his mental limitations. On October 24, 2011, he underwent a Psychological Assessment by Dr. Denise LaGrand, a licensed clinical psychologist. Dr. LaGrand administered the Wechsler Adult Intelligence Scale and Claimant was found to have a full scale IQ of 70. Dr. LaGrand concluded Claimant's overall cognitive functioning was in the borderline intellectual functioning range. His subtest scores ranged from well below average to low average. (Tr. 529). Claimant's Wide Range Achievement Test scores were consistent with his IQ scores. (Tr. 530). Dr. LaGrand diagnosed Claimant with pain disorder, due to general medical condition, dysthymic disorder, generalized anxiety disorder, and alcohol abuse. She estimated his GAF at 65. (Tr. 530).

Dr. LaGrand only found mild limitations upon Claimant's ability to perform work functions. She concluded that Claimant's symptoms "do not appear to significantly affect his performance. . . ." (Tr. 531).

Claimant first contends the ALJ's finding that he could perform the job of bench assembler is contradicted by the requirements for the position in the *Dictionary of Occupational Titles* ("DOT"). This job requires a Reasoning Level of 2 which

exceeds the ALJ's RFC. Admittedly, the ALJ limited Claimant to simple instructions and tasks when R2 jobs require the ability to carry out detailed but uninvolved written and oral instructions. The ALJ, however, identified the additional jobs of bakery worker and housekeeper. Remand is not required based upon the disqualification for a single identified job.

Claimant next asserts his low intellectual functioning level and problems with reading and writing requires close supervision. Nothing in the objective medical and psychological record indicates such a limitation.

Claimant also states that the ALJ should have found his back problems and status post femur fracture to be severe impairments. Claimant references an Attending Physician's Statement from Dr. Zachariah J. Anderson from April 14, 2011 to support the finding of the severity of the impairment. Dr. Anderson diagnosed Claimant with "OA," osteoarthritis. Dr. Anderson opines that Claimant would need to take unscheduled breaks during an 8 hour workday, would experience good days and bad days, would be absent from work about 4 days per month, would not improve for the better in the future, can use his feed for repetitive movements, and would need a sit/stand/walk at will option. (Tr. 510).

However, in his treatment notes of the same date, Dr. Anderson

7

found no abnormalities in the cervical, thoracic, or thoracolumbar spine. He found Claimant exhibited tenderness on palpation of the lumbosacral spine with spasms of the paraspinal muscles but with no abnormalities. (Tr. 515). Dr. Anderson also noted abdominal tenderness on palpation, finding a mass he estimated to be a "ventral hernia nonreduciable w/ulcer." (Tr. 514). Dr. Anderson's final assessment was hypertension, essential hypertension, ventral hernia, herniated intervertebral disc, sciatica, and anxiety disorder of unknown etiology. (Tr. 515).

In his decision, the ALJ gave Dr. Anderson's opinion "little weight" because the medical evidence did not support the degree of limitation he assessed. The ALJ found Dr. Anderson's objective findings during his office visit were "almost entirely within normal limits, revealing only lumbar tenderness and paraspinal muscle spasms." (Tr. 20). Given Dr. Anderson's final assessment and the basis for Claimant's visit being lower back pain, the ALJ's conclusion that Dr. Anderson's treatment records show Claimant as "almost . . . within normal limits" mischaracterizes the extent of the findings. Moreover, the ALJ failed to provide the necessary analysis of the weight to which Dr. Anderson's opinion is entitled as a treating physician.

In deciding how much weight to give the opinion of a treating

physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support

or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

On remand, the ALJ shall reevaluate his assessment of Dr. Anderson's opinion in light of the medical record and the Watkins required analysis.

**Credibility Evaluation**

The ALJ rejected Claimant's testimony as being inconsistent with his RFC determination. As this Court has referenced in numerous cases, this method of analysis reverses the required course of examination. The ALJ must first evaluate Claimant's testimony then consider it in reaching an RFC. Since the case is to be remanded for evaluating Dr. Anderson's opinion, the ALJ should also engage in the appropriate analysis of Claimant's

10

credibility.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. On remand, the ALJ shall reevaluate Claimant's credibility. Additionally, the

ALJ shall consider whether the lack of insurance and resources affected his ability to obtain treatment.

**Duty to Develop the Record**

Claimant also contends the ALJ should recontact Dr. Anderson to the extent he believes he needs clarification of the physician's medical opinion. This Court will not require that the ALJ do so but rather will leave the necessity of recontacting Dr. Anderson to the ALJ in the first instance. He may certainly do so if he finds it necessary.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of February, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE